Good morning all. Judge Kaney and I are privileged and pleased to have sitting with us this morning Judge Magnus Simpson of the Southern District of Indiana and we welcome her back for another tour with the Court of Appeals. Thank you. Our first case for argument this morning. You might say Go Cubs. Go Cubs. I'll say it. And that's from two judges from Indiana. Well, yeah, but we're the only ones that grew up in Illinois. Right. I grew up in Mount Prospect. New York doesn't count. I have no rebuttal. Our first case is Selective Insurance v. Target Corporation. Mr. O'Gallagher. May it please the Court. My name is Brian O'Gallagher. I represent Selective Insurance Company in this insurance dispute. This insurance dispute focuses on the issue of whether Target Corporation was entitled to coverage as an additional insured on a commercial general liability policy issued by a selective to a company named Harbor Industries, Inc. The underlying lawsuit for which Target sought coverage was a tort suit filed by a woman named Angela Brown. Ms. Brown filed a lawsuit after she claimed to have been injured in a Target store while shopping when a fitting room door came loose and fell and struck her in the head. Ms. Brown sued only Target in her lawsuit, alleging that Target had a duty to maintain its premises in a safe and suitable manner to protect its customers, and that Target had failed to do so. After the underlying case was filed, Target filed a third-party complaint naming certain additional third-party defendants, one of whom was Harbor Industries, then named insured on the selective policy. Harbor was the company that manufactured the fitting room components and sold them to Target. Harbor was not the company that assembled and installed the fitting rooms on the premises. That was a different company called Lankford Construction Company that was also named as a third-party defendant in the underlying case by Target. And what happened to them? They were named as a third-party defendant. My understanding is that they also participated in the global settlement of the underlying case. And there are allegations against them for contribution and breach of contract similar to the allegations that Target made against Harbor. As part of the third-party complaint against Harbor, Target alleged that there was a contract for the sale of the fitting rooms, and alleged that that fitting room contract required Harbor to provide insurance coverage for the benefit of Target to respond to claims like those asserted by Ms. Brown. So a major issue obviously in the coverage litigation was whether that fitting room contract did in fact require Harbor to provide coverage for Target in connection with the Brown suit. And in both the underlying case and the coverage litigation, it was established that the fitting room contract was constituted of three separate documents. There was a document called a program agreement, a supplier agreement, and a nondisclosure agreement. The nondisclosure agreement wasn't really relevant for the coverage purposes, but there was a lot of discussion in the briefs of the supplier agreement and the program agreement. And they're obviously in the record. The program agreement document contains the specific terms applicable to the sale of the fitting room components. If you look at it, it discusses the different components, the doors, the mirrors, the actually elements of the fitting room. It discusses quantities, pricing, delivery, terms like that that are specific to the fitting room transaction. The supplier agreement contains more general provisions. It doesn't specifically reference the fitting room components, but it contains general conditions that Target wanted to include into all transactions between itself and Harbor. And the supplier agreement talks about its applicability to the sale of, quote, non-retail goods and services. Again, it doesn't address the fitting room specifically, but non-retail goods would encompass the fitting rooms as they're something Target doesn't resell to its customers. So a major issue is how these two documents interrelated to form the controlling contract that controlled the obligations of the parties with respect to the sale of the fitting rooms. And if you look at them, what they say is that the program document, which is again specific to the fitting room transaction, incorporates the terms of the supplier agreement. The supplier agreement says that it likewise will be incorporated into all program agreements that Harbor and Target execute. It is the supplier agreement that contains the insurance requirements section that Target claims allows it to qualify as an additional insured on the selective policy. And the selective policy does contain a blanket additional insured provision that allows outside entities to qualify as additional insureds if Harbor is required by contracts to provide coverage for them. So the relevant insurance requirements in the dispute are in the supplier agreement incorporated into the program agreement so that they then become part of the fitting room contract. The dispute arose, or a major part of the dispute arose, because the program document states that the fitting room contract will be in effect between Target and Harbor from April 23, 2009 to July 1, 2010. The incident where Ms. Brown claims to have been injured on the premises of the Target store took place on December 17, 2011, which is about 16 or 17 months after the stated expiration date of the fitting room contract, which again is July 1, 2010. Selective submits that because the insurance requirements that were applicable to the fitting room transaction had expired as of July 1, 2010, as of December 17, 2011, Harbor was no longer required by contracts to provide coverage for Target and therefore Target doesn't qualify on the selective policy for purposes of the Brown case. The obviously Target disputes that conclusion and the district court disagreed with our analysis, finding that there was a termination provision in the supplier agreement, which was more open-ended, which said the supplier agreement would remain in effect until canceled by the parties and that that termination provision, which was indefinite and did not set a precise termination date, controlled the insurance obligation. Did Harbor and Target do any additional work together after July of 2010? Were there other program agreements between Harbor and Target? I do not know. Okay. Why we believe the district court's analysis as far as the termination provision was erroneous was a particular section of the supplier agreement, which is section 2.1. It's entitled Scope of Agreement, and it says in the event of conflict between this agreement, which is the supplier agreement and the program agreement, the terms of the program agreement shall govern. So in other words, the structure of the fitting room contract was supplier agreement incorporated into program agreement because the program agreement contains the specifics regarding the fitting rooms. In the event of a conflict created by the incorporation, program agreement controls. So we believe the district court erred when she essentially considered the two documents, the supplier agreement and the program agreement, to be separate contracts. They are separate documents, but they're not separate contracts. The insurance requirement was in the supplier agreement, right? That is correct. And essentially judged to be relevant to the fitting room transaction, the insurance requirements have got to get to the program agreement because the program agreement contains all the specifics regarding the fitting rooms. But the supplier agreement terminates, remains in effect until terminated by a party. That is what the supplier agreement says, Judge. So that's the same as the insurance thing, right? No, Judge. I would say that the supplier agreement exists to be incorporated into specific program agreements. That's what it says. It says here are general conditions that are going to apply to specific transactions. The program agreement is a document that governs or that sets forth the details of this specific transaction. The program agreement, again, contains all the specifics regarding the fitting room transactions. Because of the potential problem that you've got one document being incorporated into another document, the documents actually plan for that eventuality because they say in the supplier agreement that if there's a conflict between the supplier agreement and the program agreement, the program agreement will control. So the supplier agreement could, Judge, be, and this is, I think, where the district court judge, I would respectfully disagree with her conclusion. She said the supplier agreement remains in effect. Well, even after the termination date stated in the program agreement. It does continue to exist. And as was pointed out, there could well have been other program agreements that were executed in 2011 and 2012 and 2013 for fitting rooms, even other fitting rooms, shopping carts, light bulbs, whatever other non-retail items Harbor would supply to Target. Those other program agreements would probably incorporate the supplier agreement and then the insurance requirements in the supplier agreement would apply to those other transactions. Now, Target makes a lot of the fact that in the supplier agreement, the insurance coverage is to include products and completed operations liability coverage. So what would be the point of that if not for the insurance requirement to live on past the date of a program agreement? Well, Judge, the nature of what Harbor did, remember, Harbor is a supplier. They're not a contractor on the site. Obviously, you're well aware of the distinction between ongoing operations and completed operations. Ongoing operations coverage would apply, frankly, to the Lankford company that's out on the site installing the fitting rooms. Harbor's job is essentially to fabricate the components and ship them to their end destination. Including the door, correct? Including the door, correct, Judge. I'm not denying that. But for insurance purposes, every claim that could implicate Harbor's coverage in this scenario would be a completed operations claim. So, yes, the insurance requirements did specify completed operations coverage. And products. Yeah, products and completed operations coverage. There would not be any claim ever covered under the Harbor policy in this scenario that wouldn't be a products completed operation claim. So it's just making sure you've got the right insurance rather than inserting a provision that extends the duration of the insurance requirement. And when exactly was the door provided to Target? The evidence in the underlying case suggested it was supplied. I'm not even sure, Judge, actually I should correct myself. I don't know that it was established in the underlying case precisely when the door was supplied. I'm pretty sure, though, it was supplied definitely before the program agreement's expiration date. There was testimony in the underlying case establishing, Judge, it wasn't installed by Lankford until after the program agreement terminated. We did raise that as another almost reasonable expectations argument that we believe Target is overreaching here because we believe Target's position is essentially that there's perpetual coverage. And that's not a reasonable expectation. It's not a reasonable construction of the documents that have a termination date in them. Target did not need to structure the agreement in this way, and it is in the record these are all Target Law Department documents. These contracts were drafted by Target. And it could have been more clearly stated. In fact, it would have to have been more clearly stated if what Target wanted was the business transaction, we're only going to buy doors from you and fitting rooms through July 1, 2010. But the insurance you owe us in connection with those fitting rooms goes on forever. That really is their argument. That's not a reasonable construction of the documents. And I suppose as the party probably with more bargaining power in the transaction, Target could have asked for that. Maybe they could have even gotten the supplier to agree to that, but they didn't. They constructed a, you know, of their own accord, they constructed this termination date scenario, I presume to give Target a commercial advantage to preserve their flexibility to renegotiate with Harbor and negotiate with those suppliers. But the termination agreement runs to all the obligations in the contract. And again, I'm talking about the fitting room contract, which I think you really have to conceptualize as the integration between the supplier agreement and the program agreement. There were not two separate contracts here, which is essentially what the judge and the district court concluded. And I just think that was in error. I think that construction sort of runs afoul of just general construction contract principles, which are ambiguities were to be construed against the drafter, in this case Target, and that every provision in the contract needs to be given effect. Okay, so there's a provision that says in 8D  concurrently with the execution of this agreement and upon each renewal of such policies, which would seem to indicate a continuing insuring obligation, if I'm going to give effect to each provision of the contract. Well, Judge, the original term of the contract, which was from April of 09 to July of 2010, did in fact span two consecutive CGL policies. They didn't happen to be selective policies, but so there was an insurance renewal during the term, and that renewal process certainly would have triggered that updated certificate requirement that you're referencing. Again, the term could have been longer. It wasn't. I presume if that was in Target's control, it certainly was not in Harbor's. There was a separate argument that we made, and I want to make sure I cover it. I see I'm in my rebuttal time. The separate argument was even if Target did qualify as an additional insured, the allegations that Ms. Brown made against Target did not trigger the additional insured coverage because they didn't establish a connection between Harbor's acts of remissions and Target's liability. Target was essentially sued on a premises claim. There was no allegation that Harbor was at fault or that Harbor supplied any defective door. I'll sit down because I'm in my rebuttal time. All right. Thank you, Mr. Gallagher. Thank you, Mr. Brown. May it please the court. Counsel. My name is Garrett Boehm, and I'm here today on behalf of Target Corporation, the appellee. This court should affirm the district court's summary judgment determination for three main reasons. Number one, Target was an additional insured under Harbor's policy with Selective. Number two, Angela Brown triggered Selective's duty to defend when she filed her lawsuit against Target. Three, Target settled the Brown suit with reasonable anticipation of liability, and when it did so, it was entitled to indemnification, full indemnification from Selective. Before turning to the first issue, I wanted to address a couple of questions that were raised by the court. Number one, Judge Magnus Stinson asked whether Harbor and Target engaged in additional work, and I believe the answer is yes. When looking at the deposition of Harbor's Rule 30b-6 witness, Mr. Thompson, he indicated that Harbor continues to do work with Target on page 17 and that they were also engaged in work on a mini-assistance center, which was at pages 42 and 43 of that deposition. With regard to whether or not Target was an additional insured, I think we should probably start with what the policy requires. The policy has an additional insured endorsement. It states that who is an insured is amended to include as an additional insured any person or organization whom you, Harbor, have agreed in a written contract, written agreement, or written permit to add as an additional insured on your policy. The provisions of this coverage extension do not apply unless the written contract or agreement has been executed. Executed means signed by the named insured, or written permit issued prior to the bodily injury or property damage. So do we have a written contract or agreement executed prior to Angela Brown's injury? The answer is yes. That written agreement is the supplier qualification agreement. The supplier qualification agreement was executed by Harbor. It was executed by Target in 2007, well before the incident in 2011. The supplier qualification agreement, section 8.2, provides as follows. Supplier's commercial general liability insurance, supplier being Harbor, shall designate Target as an additional insured by endorsement acceptable to Target. Designation of Target as an additional insured shall include as an insured with respect to third-party claims or actions brought directly against Target. Here we have an action brought directly against Target, namely Angela Brown's suit. That is all that is necessary. The execution of the supplier qualification agreement is what triggered Target as being an additional insured on Harbor's CGL policy. Selective would like to contend that we really should be looking at the product agreement rather than the supplier qualification agreement. I submit that is incorrect. Although the product agreement indicates that it incorporates the supplier qualification agreement, there is no clause in the product agreement of integration clause or an entire agreement clause or that somehow the supplier qualification agreement has been superseded such that it no longer exists or is otherwise terminated or not effective. Indeed, the supplier qualification agreement governed the relationship between Target and Harbor. Without that agreement, there was no relationship. There were no products that were going to be supplied by Harbor to Target. So this court need look no further than the supplier qualification agreement to determine that Target is an additional insured. The second point is that the claim that has been asserted by Angela Brown is sufficient to trigger Selective's duty to defend. And again, it's important to look at the actual language within that complaint. The Brown complaint alleges that Target failed to warn its business invitees and customers, that would be Brown, that the door leading to and from the women's dressing room at Target, which was supplied by Harbor, was an unreasonably dangerous and hazardous condition. They also alleged that there was a failure to repair the door. So clearly, the product is at issue, the performance of the door, that was supplied by Harbor. The allegation of unreasonably dangerous and hazardous condition, clearly that is product liability allegations, and there are certainly facts to support it. Based upon those factual allegations, there is a possibility of coverage. The possibility of a coverage is all that is necessary in order to trigger the duty to defend. Certainly, the complaint does not preclude coverage. The only way that Selective could avoid its duty to defend was if the complaint precluded coverage. It does nothing of the sort, and in fact, Selective has never argued in any brief to this court that its coverage was precluded by the complaint. Mr. Boehm, Harbor was never named in the complaint, right? They were never named by Angela Brown. No, certainly not. But as we discussed earlier, the additional insured requirement included any direct claims against Target. You were aware of Harbor's existence? Yeah, just this moment, sorry. I was trying to avoid my kids' colds, but it didn't happen.  But you were aware of Harbor's existence at the time of the filing of the complaint? Certainly, and that is why we then tendered the defense to Harbor and its insured Selective, and then thereafter filed a third-party complaint, which includes additional allegations that this court should consider. Selective has contended in its brief that this court should not look at the third-party complaint, but based upon the circumstances of this case, this court certainly should. And there's no reason for this court to be limited to the pleading whims of Angela Brown, and there's plenty of Illinois case law to that effect. The circumstances of this case are that the third-party complaint was filed about eight months before Selective declined coverage. So certainly, Selective knew of the allegations in the third-party complaint. This isn't this kind of case where a third-party complaint is filed after the declination of coverage or after a declaratory judgment action has been filed in an artificial attempt to try and bolster the party's claims that the action should be covered. That's not what we're presented with here today, and the cases that Selective cites to that extent just aren't applicable. And looking at that third-party complaint, what does that allege? And those allegations include that Harbor Industries contracted with Target Corporation to design and provide materials. The design was of the fitting room, and the materials were the components of that fitting room, which included the door for the construction of the fitting rooms at the Gurney facility, and in fact did design those materials, but did design those materials in a defective way in such that the product was unfit and did not perform as intended. The third reason that the district court should be affirmed in this case is that there was a reasonable anticipation of liability on Target's behalf when it decided to settle the Brown suit. The allegations or the facts that came out during discovery included that this was not just an isolated event. There were other fitting rooms that were failing in other Target stores, and because of those failures, Harbor even had to perform a retrofit program in order to fix the failing product that it had supplied to Target. In this case, no one but Brown witnessed the event, so there certainly isn't any evidence that she was the sole proximate cause of her injuries. And based upon those facts, Target saw that the likelihood of liability certainly, at least in part, on the performance of the product was at issue, and it was reasonable to settle the dispute with Brown. What's the extent of the evidence that the district court had before it and that it considered on the issue of whether it was a covered loss, whether the duty to indemnify was met? So it had the Brown complaint, it had the third-party complaint, and also had true but unpleaded facts that it was able to consider, which included the deposition of Angela Brown that occurred before the declination of coverage. It looked to me like the district court relied on less evidence than that. In terms of evidence it relied on, if I read the opinion correctly, the deposition of Ms. Brown and the reports from the incident from Target. Is there any other evidence, not pleadings, but evidence that the court considered in determining whether the duty to indemnify was triggered? I'm not trying to dance around this. There was an affidavit that was submitted by your defense counsel that the court chose not to consider. Sure, I don't think that that affidavit, though, applies to the question of whether or not there was coverage. It may apply to the question of whether or not there was a reasonable anticipation of liability. And I think that the district court did not consider Target's attorney's affidavit for purposes of determining the reasonable anticipation of liability. It did not need to. This court does not need to either, but it could. And there's certainly a legal basis to do so. Okay, so what's the evidence? You make a good point. What's the evidence that we should consider that's in the record in terms of supporting your claim that there was a reasonable anticipation of liability? Well, there's much in the way of written discovery as well as deposition testimony. You can look at the deposition testimony given by Angela Brown, deposition testimony given by Harbor's Rule 30p6 witness, Mr. Thompson. There is also deposition testimony given by Mr. Diaz, an employee of Target. And within those depositions, it's clear that this wasn't an isolated event. As I said, it occurred in other Target stores requiring a retrofit program. So the performance of the product was certainly at issue, and at least in part the cause of Angela Brown's injury, and that is all that's necessary in order to trigger the duty to defend, which the selective failed to heed. So in conclusion, the district court's summary judgment order should be affirmed because Target is an additional insured. I had entered a written agreement, the supplier qualification agreement, requiring Target to be added to Harbor's CGL policy that the selective issued. There are adequate allegations within the complaint and the third-party complaint, as well as true but unpleaded facts that bring this Angela Brown's cause within the policy issued by selective, such that there was a duty to defend. And finally, Target reasonably anticipated liability, such that it is entitled to full indemnification from selective for its settlement with Brown, as well as its litigation costs. Thank you. Thank you. Mr. O'Gallagher. Thank you, Judge. A couple points. Counsel recited some terms from the relevant additional insured endorsement. The additional insured endorsement does indicate outside entities can qualify, quote, as required by contract. So we cited some case law in the briefs. I think there's a case, Cincinnati v. Gateway, Illinois case, that considered similar language and says what that means is that there needs to be a contract in effect between the additional insured and the named insured at the time of the loss that obligates the named insured to provide coverage. And for the reasons we talked about earlier this morning, we would submit that there was no effective agreement between Harbor and Target requiring Harbor to provide coverage to Target at the time of the loss. As far as the allegations in the underlying case, I dispute counsel's characterization of what Ms. Brown alleged. If you look at Ms. Brown's complaint against Target, she alleged that Target allowed the door that struck her to fall into disrepair, failed to maintain the door in a safe condition, allowed the door to become loose, again, failed to repair the door after noticing it was in disrepair and failed to warn customers of the dangerous condition which was caused by the unmaintained door. So Ms. Brown's allegations stated a premises liability claim against Target, and Ms. Brown was aware. At one point the district court, in her opinion, said, well, Ms. Brown may not have known about Harbor's potential involvement. I think that was improper speculation. I would respectfully suggest it was improper speculation on the court's part because all you need to do is look at the complaint itself rather than speculate as to why Ms. Brown did or did not sue anybody. But the record indicates that Ms. Brown was necessarily aware of Harbor's involvement in Brown's counsel well before the time to expire Harbor had sued, and Ms. Brown chose not to do so. The counsel made a suggestion, and the law in Illinois is fairly clear, when the plaintiff doesn't allege a necessary nexus between the additional insured's liability and the named insured's liability in Illinois, the additional insured can't create that nexus by filing a third-party complaint against the named insured. Counsel discussed that the filing of the third-party complaint wasn't motivated by insurance concerns. If you look at Target's third-party complaint, it has a count for breach of contract to procure insurance. So clearly, procuring insurance coverage from Selective was on Target's mind when it filed its pleading that it now seeks to use to trigger the additional insured endorsement. Did Selective indemnify Harbor for the global settlement that you talked about before? Yes. So Selective paid money on behalf of Harbor for Ms. Brown's claim. That is correct. Correct? That is correct. There were no coverage issues with that claim. Sure, but isn't that significant to the anticipation of liability question? Judge, well, there's anticipation of liability, and then the law requires a covered loss. Right. Let's assume there's a covered loss. I know you don't want to, but… Well, I don't. Okay. Because the covered loss for Target, understand, Judge, is different than the covered loss for Harbor. The covered loss for Target necessarily is Harbor. Target needs to pay damages. Its settlement needs to be for damages that were caused by Harbor as opposed to caused by its own negligence. So we submit that there was no evidence that those damages were covered on the additional insured endorsement. But as far as the anticipation of liability as to Harbor, we can get into the disproportionate amounts that were paid. I don't think that's in the record, but there was significantly less paid, let me put it that way, on behalf of Harbor than there was on behalf of Target. And this is just the way cases settle. Sometimes settling a case is a good business decision. So I don't think that the Selective's decision to fund a settlement on behalf of Harbor has any coverage implications as to Target's claim, if that makes sense. I'm not sure if I'm getting through that right. It looks like I'm done on my time. Thanks, Judge. Thank you. Thank you, Mr. Gallagher. Thanks to all counsel. The case is taken under advisement, and the court will proceed to the hearing.